IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Anthony Leroy Patrick, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) No. 14 C 5414 ) ) Judge Virginia M. Kendall |
| Keith T. Fuelling, et al., | ) ) |
| *Defendants.* | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony Leroy Patrick brings various claims under 42 U.S.C. § 1983 and Illinois state law related to his arrest and ultimate guilty plea for firing a gun from his home on June 15, 2013. In his suit, Patrick names Keith T. Fuelling, Jeremy Sikorski, Anthony J. Martin, David Salazar, Vidal Vasquez, Paul S. Galiardo, Dewilda Gordon, Thomas A. Taglioli, Patrick J. Golden, Kevin M. White, Michael J. O'Connor, Scott E. Reiff, Nichelle R. Harris, Juan Hernandez, Peter Torres, Ronald P. Dybas, Shawn D. McGavock, Richard E. Moravec, Robert Myers, Raymond M. Doherty, Kelvin Williams, Robert Distasio, Robert Arteaga, Jr. (collectively, "Defendant Officers"), and the City of Chicago as defendants. Defendants move to dismiss Patrick's Second Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' motion to dismiss is granted.

## BACKGROUND

The following factual allegations are taken from Patrick's Second Amended Complaint (Dkt. 120) and are presumed true for the purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Patrick was doing some housework at 7159 S. Artesian Ave., Chicago, Illinois on June 15, 2013. (Dkt. 120 ¶¶ 23–24). While Patrick was working, affiliates of the Gangster Disciples began to gather outside 7221 S. Artesian Ave., Chicago, Illinois and shout obscenities at Patrick. (*Id.* ¶¶ 24–25). Crystal Darling, Patrick's former girlfriend, lived at 7221 S. Artesian and was dating Armond Freeman, a known member of the Gangster Disciples who disliked Patrick. (*Id.* ¶ 25). As Patrick was finishing up his work and securing his tools in his truck, the men congregating outside of 7221 S. Artesian began to shoot at Patrick. (*Id.* ¶ 28). Patrick got in his truck and drove to his mother's house, located at 7159 S. Maplewood Ave., Chicago, Illinois. (Dkt. 120 ¶ 29). Upon arrival, Patrick parked his truck across the street and went inside. (*Id.*).

At the time, several people were in the 7159 S. Maplewood house in addition to Patrick and his mother. Specifically, Dominique Boyd (Patrick's then-girlfriend), Boyd's children, and four of Patrick's five children. (*Id.* ¶ 10). Patrick spoke with Boyd about getting shot at outside of 7159 S. Artesian before realizing his truck was unlocked. (*Id.* ¶¶ 30–32). Concerned about the equipment still in his truck, Patrick walked across the street to lock it up. (Dkt. 120 ¶¶ 31–32). While standing next to his truck, a brick crashed through the windshield and Patrick looked up to see

Freeman, the thrower, accompanied by another Gangster Disciple. (*Id.* ¶¶ 32–33). Freeman and his companion began shooting at Patrick, continuing to advance while Patrick ran across the street back inside his mother's home. (*Id.* ¶ 34). Once inside his mother's home, Patrick "grabbed a gun that was loaded with buck shots and reached his hand out from a cracked front door and shot the gun twice," hitting Freeman "in the buttocks and behind the ear." (*Id.* ¶ 34). Freeman and the other Gangster Disciple stopped shooting at Patrick and ran away. (Dkt. 120 ¶ 36).

Patrick then "sat down for a bit to gather himself and then went to take a shower." (*Id.* ¶ 37). After showering, Patrick spoke with Ms. Boyd. (*Id.*). Sometime after speaking with Boyd, Patrick heard banging on the front door. (*Id.*). Patrick looked outside and saw Fuelling, Sikorski, and Martin standing on the porch along with "many other officers [including O'Connor and White]" behind them "creating a circumference around the front of the house." (Dkt. 120 ¶¶ 11–12). The officers outside told Patrick they wanted to speak with him and asked him to open the door. (*Id.* ¶ 13). When Patrick opened the front door and confirmed his identity, Fuelling and Sikorski "shoved him to the ground inside the entryway to the house and handcuffed him." (*Id.*).

Sikorski yelled at Patrick, demanded to know where the gun was, and "threatened to tear [Patrick's] mother's home apart if he didn't tell them where the gun was." (*Id.* ¶ 14). Patrick was afraid to remain quiet, afraid for the safety of Boyd, her children, his children, and his mother, and felt he had no choice but to obey the officers and said there was a gun in the safe downstairs. (Dkt. 120 ¶ 16). Fuelling

and Sikorski pulled the handcuffed Patrick off the ground and instructed him to lead them to the safe. (*Id.* ¶ 17). Once in the basement, Fuelling and Sikorski directed the children to go upstairs and shut the basement door, leaving them alone with Patrick. (*Id.*). Sikorski failed to open the locked safe and told Patrick to open it, which he did. (*Id.* ¶ 18). Once the safe was opened, Sikorski took "a number of guns and ammunition" out of the safe and put them into pillowcases. (Dkt. 120 ¶ 19). Vasquez came downstairs and followed as Sikorski and Fuelling led Patrick back upstairs and into a waiting squad car. (*Id.* ¶ 21). Gordon and Galiardo were upstairs as Patrick returned from the basement and Gordon instructed officers to "treat [Patrick] like Jesus." (*Id.* ¶ 22).

The officers had neither a search nor an arrest warrant. (*Id.* ¶ 15). Vasquez spoke to Patrick's mother as Patrick was being placed in the squad car and "put a paper on the [trunk] of the squad car and instructed [Patrick's] mother that she needed to sign the paper because as the owner of the house they needed her to sign the document so they could bring her back the property that had been seized." (Dkt. 120 ¶ 66). Patrick's mother has bad eyesight and didn't read the documents offered by Vasquez but signed them nonetheless. (*Id.*).

Patrick was arrested and taken to the station at 51st Street and Wentworth Avenue. (*Id.* ¶¶ 39–40). Patrick was placed in a room where "each of his wrists were separately hand-cuffed to the opposite ends of a low bench" so that he was "forced to be in a squatting position with his arms splayed out along the length of the bench" and "left alone in that position for many hours" (*Id.* ¶ 39). Between his arrest on

June 15, 2013, and his preliminary hearing on June 26, 2013, the officers "falsified police reports" and "concealed and ignored evidence" that would support Patrick's account of a defensive shooting. (Dkt. 120 ¶¶ 43–46). Patrick was ultimately charged with 18 offenses: 5 counts of attempted first-degree murder, 1 count of aggravated battery, 5 counts of "armed habitual criminal", and 7 counts of unlawful use or possession of a weapon. (*Id*. ¶ 47). Bail was set at $750,000, which Patrick could not pay, and so he spent five years and five months in detention before pleading guilty to one count of aggravated battery with a firearm on October 31, 2018. (Dkt. 88 at 1).

Patrick filed the present civil action on July 15, 2014, naming the Chicago Police Department, David Salazar, David Montes, and the City of Chicago as defendants. (Dkt. 1 at 2). Patrick alleged in the Complaint defendants violated his constitutional rights by entering his home and arresting him without probable cause, a warrant, or exigent circumstances and failing to afford him a preliminary hearing within 48 hours of his arrest. (*Id*. at 20–21). This Court dismissed Patrick's initial Complaint without prejudice for failure to include the date of his arrest. (Dkt. 6 at 2).

Patrick filed a First Amended Complaint on October 16, 2014, which named Fuelling, Sikorski, Vasquez, Martin, Gordon, and Galiardo as defendants. (Dkt. 15). In the First Amended Complaint, Patrick alleged defendants violated his constitutional rights by entering his home and arresting him without a warrant, probable cause, or exigent circumstances. (*Id*. at 23–27). On March 5, 2015, this Court stayed Patrick's case pending the resolution of his underlying criminal case in

*People v. Patrick*, No. 13 CR 12650-01 in the Circuit Court of Cook County, Illinois. (Dkt. 37). The case was reinstated on January 7, 2019, upon Patrick's guilty plea and release from custody. (Dkt. 92).

Patrick filed the operative Second Amended Complaint on March 6, 2020. (Dkt. 120).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court accepts the complaint's factual allegations as true and draws all permissible inferences in Plaintiff's favor. *Schumacher*, 844 F.3d at 675 (quoting *Iqbal*, 556 U.S. at 678). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Seventh Circuit interprets this plausibility standard to mean that the plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Schumacher*, 844 F.3d 676 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Iqbal*, 556 U.S. at 678)).

## DISCUSSION

### I. Count I: Section 1983 Unlawful Search and Seizure

In Count I, Patrick alleges the Defendant Officers violated his Fourth Amendment rights by conducting an unreasonable search and seizure of his person and his property without a warrant. (Dkt. 120 ¶¶ 54–59). The existence of probable cause is an absolute bar to such claims under § 1983. *See Muhammad v. Pearson*, 900 F.3d 898 (7th Cir. 2018). Defendants argue Judge Wood's reasoning for dismissing the complaint in *Patrick v. Cook County Department of Corrections*, No. 13-cv-08552, a previous suit filed by Patrick, collaterally estops Patrick from arguing the absence of probable cause in the present case. (Dkt. 146 at 12–13).

"The doctrine of collateral estoppel, also known as issue preclusion, 'ordinarily bars relitigation of an issue of fact or law raised and necessarily resolved by a prior judgment.'" *Wagner v. U.S.*, 971 F.3d 647, 657 (7th Cir. 2020) (quoting *Bravo-Fernandez v. U.S.*, 137 S. Ct. 352, 358 (2016)). For collateral estoppel to apply, "(1) the issue sought to be precluded [must be] the same as an issue in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *Waagner v. U.S.*, 971 F.3d 647, 657 (7th Cir. 2020).

Patrick's prior *pro se* complaint is strikingly similar to the present complaint and raised the same legal issue based on the same factual allegations. *Compare* (Dkt. 120) *with Patrick*, No. 13-cv-08552, Dkt. 1. In reviewing Patrick's application to proceed *in forma pauperis*, Judge Wood dismissed the complaint under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim under Rule 8. *Patrick*, No. 13-cv-08552, Dkt. 5. Judge Wood determined Patrick's allegation in his complaint that he fired a gun in self-defense established probable cause, thus disposing of his Fourth Amendment claims. *Id.* at 4.

Patrick's present suit meets all the elements of collateral estoppel. Patrick raised the same issue in his first suit and, even though he declined to timely challenge dismissal of the earlier complaint, the issue was fully litigated. *See, e.g., Trepainer v. City of Blue Island*, No. 03-C-7433, 2008 WL 4442623, at *4 (N.D. Ill. Sept. 29, 2008) ("[A] pro se party is given full and fair opportunity to litigate his case when he is afforded the minimum procedural due process requirements."). The Seventh Circuit has squarely rejected Patrick's contention that his *pro se* status deprived him of the opportunity to fully litigate the issue. *DeGuelle v. Camilli*, 724 F.3d 933, 938 (7th Cir. 2013) ("[T]he idea that litigation pro se should insulate a litigant from application of the collateral estoppel doctrine . . . is absurd."). Collateral estoppel is intended to prevent the unnecessary waste of litigants' and judicial resources of allowing the same issue to be decided more than once and to discourage parties who lose before one decisionmaker from shopping around for another. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 140 (2015). By filing multiple lawsuits

arising out of his June 15, 2013, arrest involving identical legal issues, Patrick risked judgement in one precluding the other. Although Patrick questions the merits of Judge Wood's finding of probable cause, collateral estoppel prevents relitigation of correct and incorrect decisions alike. *See Id*. at 157–58. Judge Wood's ruling as to the viability of Patrick's underlying constitutional claims was essential to the final judgment on the merits. Consequently, Patrick's § 1983 claim as to unlawful search and seizure is precluded by federal common law.

Count I is collaterally estopped and dismissed with prejudice.

## II.   Count II: Section 1983 Excessive Force

Defendants seek dismissal of Patrick's claim under § 1983 for excessive force on the basis that the claim is time-barred as a matter of law. (Dkt. 120 at 13–15). While a statute-of-limitations argument is an affirmative defense and Patrick "need not anticipate defenses and attempt to defeat them" in his complaint, he may plead himself out of court by alleging facts sufficient to establish a statute-of-limitations defense. *Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012); *see also Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) (dismissing where it was "clear from the face of the amended complaint that it [was] hopelessly time-barred"). Here, Patrick pleaded facts necessary to raise a statute of limitations inquiry, leaving the Court to consider whether his claims are time-barred. Where a plaintiff has pled facts which arguably establish an affirmative defense and both sides have briefed the issue, practical considerations—such as discovery costs, attorneys' fees, and judicial efficiency—provide courts with ample reasons to resolve

a dispositive point of law early in a case, whether the parties have briefed the question as a Rule 12(b)(6) or a Rule 12(c) issue. In either case, a court's decision rests on the pleadings and whether a plaintiff has affirmatively pled himself out of court.

The length of the limitations period for a § 1983 action is determined by reference to state law personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Illinois, a two-year statute of limitations applies to § 1983 claims. 735 ILCS 5/13-202; *Flynn v. Donnelly*, 793 Fed. Appx. 431, 434 (7th Cir. 2019). Federal law, however, determines when § 1983 claims accrue. *Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018). Excessive force claims accrue immediately. *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010).

Patrick's excessive force claim springs from two primary allegations. First, that Fuelling and Sikorski "shoved him to the ground inside the entryway to the house and handcuffed him." (Dkt. 120 ¶ 13). Second, that once placed under arrest, Patrick was put in a room at the station where "each of his wrists were separately hand-cuffed to the opposite ends of a low bench" which "forced [him] to be in a squatting position with his arms splayed out along the length of the bench" and "left alone in that position for many hours." (*Id.* ¶ 39). Both alleged events occurred on June 15, 2013, meaning the limitations period elapsed on June 15, 2015. (*Id.* ¶¶ 9, 40). Patrick's Second Amended Complaint, filed on March 6, 2020, is outside the limitations period.

Patrick responds that he alleged an excessive force claim in both the Complaint and the First Amended Complaint and, regardless, the allegations contained within the Second Amended Complaint relate back to those in the Complaint and First Amended Complaint under either Rule 15(c)(1)(A) or Rule (c)(1)(B). To allege excessive force, Patrick must plead that an officer used unreasonable force—i.e., greater force than reasonably necessary—in effectuating his arrest in violation of his Fourth Amendment rights. *See Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012). Even under a generous reading, neither the Complaint nor the First Amended Complaint alleged excessive force. *See Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018) ("In considering the defendants' motion to dismiss, the District Court was required to interpret the *pro se* complaint liberally[.]"). In these earlier pleadings, Patrick merely alleges officers "handcuffed" him. (Dkt. 1 at 20; Dkt. 15 at 23). Entirely absent from the Complaint and First Amended Complaint are any reference to the degree of force used to handcuff Patrick or being left in an uncomfortable position for an extended period of time at the police station. These allegations differ materially from those at issue in the cases cited on response in which plaintiffs claimed the handcuffs were "tight" or that officers "slammed" a door shut. *See, e.g., Payne v. Pauley*, 337 F.3d 767, 774–75 (7th Cir. 2003); *Waterworth v. City of Joliet*, No. 17 C 4990, 2018 WL 2846393, at *1, 4 (N.D. Ill. 2018).

Rule 15(c)(1)(B) permits relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). An

Page 11 of 20

amendment relates back to the original complaint if "the factual situation upon which the action depends remains the same and has been brought to the defendant's attention by the original pleading." *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001). "The central inquiry under Rule 15(c) is whether the original complaint 'gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one.'" *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 741 (7th Cir. 2018) (quoting *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006)). Rule 15(c)(1)(B) does not salvage Patrick's excessive force claim because it rests upon a set of facts and allegations wholly absent from either the Complaint or the First Amended Complaint. Both the Complaint and the First Amended Complaint describe police handcuffing Patrick, searching the house for a gun, and arresting him, purportedly without probable cause or a warrant. (Dkt. 1 at 20–21; Dkt. 15 at 23–27). While the Second Amended Complaint includes these allegations, it also incorporates an entirely new set of factual claims, specifically that officers used inappropriate physical force to handcuff and restrain Patrick and that he was left in a stress position at the police station. (Dkt. 120 ¶¶ 13–14, 39). These are the allegations upon which Patrick's excessive force claims rely and they appeared initially in the Second Amended Complaint.

Patrick fares no better under Rule 15(c)(1)(A). Rule 15(c)(1)(A) permits an amendment to relate back to the date of the original pleading when "the law that provides the applicable statute of limitations allows relation back[.]" Fed. R. Civ. P.

15(c)(1)(A). "Under Illinois law, relation back is allowed only when two requirements are met: (1) the original complaint was timely filed, and (2) the amended complaint grew out of the same transaction or occurrence set forth in the original pleading." *Henderson*, 253 F.3d at 932–33 (citing 735 ILCS 5/2-616(b) and *Digby v. Chicago Park Dist.*, 608 N.E.2d 116, 118 (Ill. 1992)). Illinois courts apply a "sufficiently close relationship" test whereby "new factual additions will be considered to relate back where there is a 'sufficiently close relationship' between the original and new claims . . . in the general character of the set of factual allegations[.]" *Porter v. Decatur Mem. Hosp.*, 882 N.E.2d 583, 592 (Ill. 2008) (noting that "an amendment is considered distinct from the original pleading and will not relate back where . . . the two sets of facts are different in character, as for example when one alleges a slander and the other alleges a physical assault[.]"). Illinois's relation back doctrine "is, in all material respects, identical to the federal rule." *In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 331 (7th Cir. 2009). For all the reasons previously discussed, the allegations underpinning Patrick's excessive force claim are of a different character and do not bear a "sufficiently close relationship" to those of either the Complaint or the First Amended Complaint.

Count II is untimely and dismissed with prejudice.

**III.    Count III: Section 1983 Due Process**

Defendants argue Count III, Patrick's § 1983 Due Process claim, is barred under *Heck v. Humphrey*. (Dkt. 146 at 8–10); 512 U.S. 477 (1994). The *Heck* doctrine ensures against civil collateral attacks against outstanding criminal judgments.

*Heck*, 512 U.S. at 484–85. Under *Heck*, Patrick cannot bring § 1983 claims which "necessarily imply the invalidity of [the] conviction or sentence" until he can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 486–87. Even if Patrick disclaimed any intention of challenging his criminal conviction, *Heck* precludes any § 1983 claim "based on allegations that, if true, would be inconsistent with a valid conviction." *Mack v. City of Chicago*, 723 Fed. Appx. 374, 376 (7th Cir. 2018) (quoting *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)).

In applying *Heck*, courts must examine the relationship between the § 1983 claim at issue and the charge on which the plaintiff was convicted. *Hardrick v. City of Bollingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (internal citation omitted); *see also VanGilder v. Baker*, 435 F.3d 689, 691 n. 1 (7th Cir. 2006) ("Whatever a plaintiff may originally have been criminally charged with, in applying the *Heck* Court's holding we examine only the actual conviction.") (internal citations omitted). In exchange for the State dismissing the remaining seventeen charges, Patrick pleaded guilty to one count of aggravated discharge of a weapon on October 31, 2018. (Dkt. 88 at 1; Dkt. 120 ¶ 51). In Illinois, "[a] person commits aggravated discharge of a firearm when he or she knowingly or intentionally . . . [d]ischarges a firearm in the direction of another person[.]" 720 ILCS 5/25-1.2(a)(2). Patrick concedes that he fired a gun at Freeman and his companion, striking Freeman. (Dkt. 120 ¶¶ 34–35); *see also McCarthy v.*

*U.S.*, 394 U.S. 459, 466 (1969) ("[A] guilty plea is an admission of all the elements of a formal criminal charge[.]"). So far, so good.

However, Patrick's Due Process claim is rooted in his Fourteenth Amendment right to a fair trial. (Dkt. 120 ¶ 70).[1] In Count III, Patrick alleges Defendant Officers "deliberately withheld exculpatory evidence, and fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution[.]" (*Id.* ¶ 69). In doing so, Defendant Officers caused "the unjust criminal conviction of [Patrick], thereby effectively denying him his constitutional right to a fair trial[.]" (*Id.* ¶ 70). This claim baldly attacks the validity of Patrick's conviction.

Moreover, one of the key arguments underpinning Patricks' Due Process claim is that he acted in self-defense. (*Id.* ¶¶ 34–36, 44, 48). Patrick accuses Defendant Officers of "intentionally and purposefully" ignoring and concealing evidence that he acted in self-defense. (Dkt. 120 ¶ 44). Specifically, Defendant Officers allegedly "did not properly investigate the bullet casings and bullet holes left at the scene which evidenced that [Patrick] had been shot at." (*Id.*). Self-defense is an affirmative defense to aggravated discharge of a firearm in Illinois and a defendant cannot be convicted if the force used was justified. 720 ILCS 5/7-1(a); *see also, e.g., People v. Williams*, 35 N.E.3d 1043, 1051 (Ill. App. Ct. 2015) (stating that "in order to sustain a conviction for aggravated discharge of a firearm the State had to prove that

---

[1] On response, Patrick attempts to recharacterize Count III as a claim for unlawful pretrial detention under the Fourth Amendment. (Dkt. 161 at 6). Whether Patrick could have asserted a claim for unlawful pretrial detention, and despite what Patrick deems strategically expedient in responding to a Rule 12(b)(6) challenge, the Second Amended Complaint itself does not maintain such a claim. The Court will not entertain Patrick's efforts to amend the operative complaint through briefing. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1103 (7th Cir. 1984)).

defendant . . . was not justified in using the force which he used"). Patrick's entire account of the shooting which preceded his arrest necessarily implies his conviction is invalid.

Count III is barred under *Heck* and dismissed without prejudice.[2]

## IV. Counts IV–VI and *Monell* Claim

In addition to alleging substantive constitutional violations under § 1983, Patrick also brings a conspiracy claim (Count IV), a failure to intervene claim (Count V), a supervisor liability claim (Count VI), and a *Monell* claim against the City of Chicago (Count III, Count V, Dkt. 161 at 34–35). None of these are an independent basis of liability under § 1983; each requires an underlying constitutional violation. *Smith v. Gomez*, 550 F.3d 613, 617–18 (7th Cir. 2008) ("We note at the outset that conspiracy is not an independent basis of liability in § 1983 actions."); *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation[.]") (quoting *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)); *Word v. City of Chicago*, 946 F.3d 391, 395 (7th Cir. 2020) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights.") (quoting *King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007)); *Higgins v. Correctional Medical Services of Illinois, Inc.*, 178 F.3d 508, 513–14 (7th Cir. 1999) (supervisor

---

[2] "A suit barred by the doctrine of *Heck* is premature and must be dismissed without prejudice, because *Heck* holds that the claim does not accrue until the conviction has been set aside." *Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019) (citing *Morgan v. Schott*, 914 F.3d 1115, 1122 (7th Cir. 2019) and *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014)).

liability); *see, e.g., Edwards v. Joliff-Blake*, No. 13 C 4558, 2017 WL 1134473, at *10 (N.D. Ill. Mar. 27, 2017) (supervisor liability). Because none of Patrick's constitutional claims under § 1983 survive a Rule 12(b)(6) challenge, so too must his derivative claims fail.

Count IV, Count V, Count VI, and the *Monell* cause of action contained within Counts III and V are dismissed without prejudice.

## V. Count VII: Illinois Malicious Prosecution

Defendants argue Patrick's claim for malicious prosecution under Illinois law is barred by *Heck*. (Dkt. 146 at 11–12). Illinois courts embraced the *Heck* rule for claims arising under Illinois law. *Lieberman v. Liberty Healthcare Corp.*, 948 N.E.2d 1100, 1106–08 (Ill. App. Ct. 2011); *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1137 (7th Cir. 2012). "To proceed on a [malicious prosecution] claim, Illinois requires that the plaintiff prove that the underlying criminal proceedings terminated in a manner *indicative of the innocence* of the accused, a higher standard than *Heck*'s favorable termination accrual rule." *Savory v. Cannon*, 947 F.3d 409, 430 (7th Cir. 2020) (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (1996) ("[A] malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused.")) (emphasis in original). First, the criminal proceedings did not terminate in Patrick's favor. Patrick pled guilty to one count of aggravated battery with a firearm in exchange for the State dropping the remaining charges. (Dkt. 88 at 1; Dkt. 120 ¶ 51); *see Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) ("The abandonment

of the proceedings does not indicate the innocence of the accused when the *nolle prosequi* results from: an agreement or compromise with the accused[.]"); *see also, e.g., Bridgeforth v. City of Glenwood*, No. 18 C 7150, 2020 WL 1922907, at *6 (N.D. Ill. Apr. 21, 2020). Patrick's contention that the judicial proceedings "ultimately terminated in [his] favor in a manner indicative of innocence" is both conclusory and inconsistent with his guilty plea. (Dkt. 88 at 1; Dkt. 120 ¶ 95); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) ("[Courts] 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'") (internal citations omitted). Second, a finding in favor of Patrick on the malicious prosecution count would necessarily challenge the validity of his conviction. Patrick alleges the Defendant Officers "withheld evidence that would have proven [Patrick's] innocence" and "improperly subjected [him] to judicial proceedings[.]" Patrick's malicious prosecution claim runs headlong into the *Heck* bar and fails. Third, Patrick's failure to adequately allege favorable termination means he also failed to state a claim for malicious prosecution.

Count VII is barred under *Heck* and dismissed without prejudice.

**VI.   Count X: Illinois Intentional Infliction of Emotional Distress**

Defendants similarly argue Patrick's intentional infliction of emotional distress ("IIED") claim under Illinois law is barred by *Heck*. (Dkt. 146 at 11–12). Patrick's IIED claim relies upon Defendant Officers' purported fabrication of evidence and suppression of exculpatory evidence resulting in an improper conviction. Indeed, in Count X itself, Patrick alleges Defendants intended to cause emotional distress "by

wrongfully inculpating [him] in a crime he did not commit." (Dkt. 120 ¶ 109). Patrick directly attacks the validity of his conviction, which he cannot do until the conviction is set aside. *See Lieberman*, 948 N.E.2d at 1106–08 (Ill. App. Ct. 2011); *see also, e.g., Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 803 (N.D. Ill. 2013) (recognizing Illinois adopted *Heck* for state law claims).

Count X is barred under *Heck* and dismissed without prejudice.

## VII. Counts VIII, IX, and XI

In Count VIII, Count IX, and Count XI, Patrick brings claims for conspiracy, superior liability, and indemnification under Illinois law, respectively. None of these constitutes an independent cause of action and each requires an underlying claim. *Thomas v. Fuerst*, 803 N.E.2d 619, 626 (Ill. App. Ct. 2004) (If a "plaintiff fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails."); *see, e.g., Wrice v. Burge*, 197 F. Supp. 3d 939, 957 (N.D. Ill. 2015) (superior liability); *Shelton v. Schneider*, No. 05 C 5955, 2006 WL 59364, at *8 (N.D. Ill. Jan. 4, 2006) (superior liability); *Patrick v. Mathews*, No. 16-cv-10118, 2017 WL 1739935, at *4 (N.D. Ill. May 7, 2017) (indemnification). Because Patrick fails to state a claim on any of his substantive causes of action, his derivative causes of action similarly fail.

Counts VIII, IX, and XI are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Patrick's Second Amended Complaint is granted. (Dkt. 143; Dkt 146). Counts III–XI are dismissed

without prejudice. Count I is collaterally estopped and dismissed with prejudice. Count II is dismissed with prejudice as untimely. As each of the counts are dismissed, the Court declines to reach arguments as to individual defendants at this time. Patrick is given 21 days from the date of this order to file a Third Amended Complaint that comports with this Opinion if he is able to do so.

_____
Virginia M. Kendall
United States District Judge

Date: March 5, 2021